UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SHEILA MAE TRAVERS-SHEIK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 05-11631 GAO |
| v. | ) | |
| | ) | |
| HABIT MANAGEMENT INSTITUTE (sic), | ) | |
| | ) | |
| Defendant | ) | |

### DEFENDANT HABIT MANAGEMENT, INC'S
### MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Habit Management, Inc. ("Defendant" or "HMI")[1] hereby moves this

Honorable Court, pursuant to Rule 12(b)(6) and on other grounds set forth more fully

herein, to dismiss with prejudice the claims Plaintiff Sheila Mae Travers-Sheik

("Plaintiff") makes against HMI in her Amended Complaint in this action.[2]

As grounds for its Motion, HMI states that: (1) Plaintiff fails to state claims of

race, color or national origin discrimination or retaliation under Title VII;[3] (2) Plaintiff

---

[1] Plaintiff has misidentified HMI in the caption of this matter as "Habit Management Institute."

[2] At the Scheduling Conference on April 20, 2006, the Court ordered Complainant to file an Amended Complaint, clarifying the nature of her claims as well as whether she was filing under state or federal law. The Court made it clear to Plaintiff, who is appearing *pro se* in this matter, that her Amended Complaint would replace her original Complaint. HMI notes that Plaintiff identifies seven individuals as "Defendants" in the body of her Amended Complaint; her original Complaint identified only HMI as a defendant. Some of these individuals are currently employed by HMI, and it is HMI's understanding that none of them has been served with the Amended Complaint. Accordingly, no responsive pleading is due from them.

[3] The Amended Complaint reflects that Complainant brings her claims of discrimination and retaliation under Title VII. In light of the fact that the Court instructed Plaintiff to clarify whether she was proceeding under state or federal law, HMI assumes that Plaintiff is <u>not</u> bringing claims under M.G.L. c. 151B. Accordingly, HMI interprets Plaintiff's allegations that she believes she was retaliated against for having complained to the Massachusetts Commission Against Discrimination ("MCAD") as incorporating a theory of retaliation for having complained to the Equal Employment Opportunity Commission (where her complaint was cross-filed). Should the Court hold that Plaintiff's Amended Complaint purports to allege a

alludes to disability discrimination, but fails to state the requisite factual elements of such a claim under either federal or state law;[4] (3) Plaintiff has failed to exhaust her administrative remedies with respect to her claims of national origin or disability discrimination, or retaliation; (4) Plaintiff's claim under the Rehabilitation Act of 1973 fails because that statute does not apply to HMI; (5) Plaintiff's claim under M.G.L. c. 149 § 19 is barred because that statute does not provide a private right of action, and because M.G.L. Chapter 151B would preempt it, even if it did;[5] and (6) any common law tort claims Plaintiff purports to allege are barred by the Massachusetts Workers' Compensation Act.  Accordingly, HMI respectfully submits that Plaintiff's claims against it should be dismissed, with prejudice.

---

claim under Chapter 151B, HMI submits that she has failed to state the elements of a claim of discrimination or retaliation under that statute as explained in detail herein.

[4] *See* n. 3, *supra*.  Plaintiff does not reference the Americans With Disabilities Act ("ADA") among those statutes pursuant to which she makes her claims against HMI.  Should the Court hold that Plaintiff's Amended Complaint purports to allege a claim of disability discrimination under either the ADA or Chapter 151B, HMI submits that she has failed to state the elements of such a claim, as described more fully herein.

[5] Even if there were a private right of action under M.G.L. c. 149, § 19, Plaintiff would not be permitted to pursue it in this case.  Her claim is one of workplace discrimination, and such claims are properly brought under Chapter 151B (for purposes of state law), which occupies the field and precludes the filing of claims based on the same facts under other state statutes or common law.

## BACKGROUND[6]

### A. Plaintiff's Employment By HMI

Defendant is an accredited Substance Abuse Treatment organization offering multi-disciplinary treatment services to individuals addicted to drugs. HMI provides outpatient services to communities in need in a manner which respects individuals' sense of worth, recognizes their desire to improve the quality of their lives, and enables them to function normally in society. HMI has been in operation since 1986, and provides treatment services at fifteen different sites in Massachusetts and New Hampshire, including the Clinic in Yarmouth, Massachusetts, where Plaintiff worked.[7] HMI employed Plaintiff as a Urine Monitor/Health Aide (a position later renamed "Office Assistant") from January 3, 2001 to December 19, 2002, when she resigned. *See* Exs. "A" (MCAD Charge) and "B" (MCAD LOPC Determination) hereto.

In her Amended Complaint, Plaintiff alleges that "they" discriminated against her while she was employed by HMI,[8] and that this discrimination was on the basis of her race and origin, and her last name of "Sheik." Plaintiff claims that this discrimination

---

[6] HMI assumes, for purposes of its Motion to Dismiss only, that the allegations set forth in the Amended Complaint are true. The facts set forth in this section are taken from Plaintiff's Amended Complaint, supplemented with dates of employment and information on the title of the position Plaintiff held at HMI, as reflected in Plaintiff's MCAD Charge, a copy of which is attached hereto as Ex. "A." The Court should consider solely those facts set forth in the Amended Complaint in deciding whether Plaintiff pleads her claims sufficiently for purposes of ruling on HMI's Motion to Dismiss. The Court may, however, refer to the MCAD Charge, as well as the MCAD Lack of Probable Cause determination (Ex. "B" hereto) and the EEOC's Notice of Dismissal and Right to Sue (Ex. "C"), to the extent that such reference is necessary to rule on HMI's arguments concerning exhaustion of administrative remedies. Such consideration does not convert the motion into a Rule 56 motion. *See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001)(Court may consider documents that are public records, referenced in the Complaint, or central to the plaintiff's claims, when the authenticity of them is undisputed, without converting the motion to dismiss into a Rule 56 motion for summary judgment). *See also Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 879, n.3 (1st Cir. 1991).

[7] *See* http://www.habitmanagement.com. HMI refers the Court to this web-site for background informational purposes, and not to offer facts for consideration in ruling on HMI's Motion to Dismiss.

[8] The reference to "they" in the Amended Complaint appears to be a reference not to HMI but to four individuals: Linda Fraunfelter, two unnamed co-workers, and an unnamed security guard.

took the form of not being offered certain open positions for which she applied, "even though [she had a] college education." Amended Complaint, Facts.

Plaintiff also states that "they" "harassed and intimidated" her because she had attempted suicide, identifying one instance on December 19, 2002, when she claims that her former boss, Linda Fraunfelter, told Plaintiff that she was not allowed to work on "the CPA" because she had attempted suicide. Plaintiff alleges that she had been performing this work for a year and a half. She also states that when she went to the Program Director, Nick Mazzoni, for help, he told her that she was "angry with the wrong person."

Finally, Plaintiff claims that HMI retaliated against her because she complained to the MCAD on November 18, 2002.[9] She alleges that her hours were cut and that she was demoted and humiliated. Plaintiff states that the environment became very hostile, so that she was forced to resign. She did so on December 19, 2002. Amended Complaint, Facts.

## B. Procedural History

On September 1, 2004, the MCAD issued a Lack of Probable Cause finding on all of Plaintiff's claims, against HMI and the two individual Respondents. Plaintiff did not appeal that decision. The EEOC adopted the MCAD's findings and determination, and issued a Notice of Dismissal and Right to Sue to Plaintiff on May 1, 2005. Plaintiff filed a Complaint with this Court, solely against HMI, on July 28, 2005, and served HMI on September 26, 2005. The Court held a Scheduling Conference on April 20, 2006, at which Plaintiff raised numerous allegations not set forth in her Complaint. The Court ordered Plaintiff to file an Amended Complaint, clarifying her claims and the authority

---

[9] As the MCAD Charge reflects, Plaintiff's complaint to the MCAD was of alleged race and color discrimination, not of national origin, disability, perceived disability or other discrimination. *See* Ex. "A." She filed this administrative charge against HMI, Linda Fraunfelter and Arthur Eisner (co-worker).

pursuant to which she brought them.  Plaintiff filed and served her Amended Complaint

on May 12, 2006, naming seven individuals, as well as HMI, as defendants and proposing

some entirely new theories of liability.  HMI moves to dismiss the Amended Complaint

on numerous grounds, detailed in the following sections.

## II.    ARGUMENT

### A. Plaintiff Fails To State A Claim Of Discrimination Under Title VII

Plaintiff states that she was discriminated against on the basis of her race, origin

and last name in that she was not granted positions for which she applied, even though

she had a college education.[10]  Amended Complaint, Facts.  She does not allege any facts

showing that she met the job qualifications for any particular job for which she applied

and was not hired.  Nor does she allege any facts showing, or allowing an inference of,

discriminatory motive on the part of HMI on the basis of Plaintiff's race or national

origin in allegedly failing to place her in any particular position.

Plaintiff's conclusory accusations, unaccompanied by factual allegations to

support them, are not sufficient to state a claim.  A pleading which sets forth a claim for

relief must contain, among other things, a short and plain statement of the claim showing

that the pleader is *entitled* to relief.  Fed. R. Civ. P. 8(a).  The Court must carefully

balance the rule of simplified civil pleading against the need for more than conclusory

allegations.  *Wash. Legal Found. v. Mass. Bar. Found.*, 993 F.2d 962, 971 (1st Cir.

1993).  Because only well-pleaded facts are taken as true, the court does not accept a

plaintiff's unsupported conclusions or interpretations of law.  *Id.; see also United States*

*v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992) ("a reviewing court is obliged neither to

---

[10] Plaintiff's complaint that she was discriminated against on the basis of her last name ("Sheik") appears to be part of her national origin claim.

credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation,... nor to honor subjective characterizations, optimistic predictions, or problematic suppositions." (citations omitted)). [11]

Plaintiff's claims are unsupported by any articulation of factual basis. Bald assertions of jurisdiction, discrimination and retaliation are simply not enough to sustain legal action. Accordingly, HMI submits that Plaintiff's claims under Title VII of race, color and national origin discrimination be dismissed.

### B. Plaintiff Fails To State A Claim for Retaliation Under Title VII

Plaintiff's claim under Title VII of unlawful retaliation by HMI is similarly unsupported by the requisite factual allegations. In order to state a claim for retaliation, Plaintiff must allege that she engaged in a protected activity, that she suffered an adverse employment action, and that there are sufficient facts reflecting a causal connection between the protected conduct and the adverse action to raise a question of possible retaliation. *Chungchi Che v. Mass. Bay Transp. Auth.,* 342 F.3d 31, 38 (1st Cir. 2003).

Plaintiff alleges that she filed her Charge of discrimination with the MCAD on November 18, 2002. Amended Complaint, Facts. She states that HMI retaliated against her after this by cutting her hours and demoting her. These are the very same facts she alleged in her MCAD Charge, however, as the basis for her claim of race discrimination. *See* MCAD Charge, attached hereto as Ex. "A." As a matter of law, the reduction in hours and alleged demotion cannot form the basis for Plaintiff's claim of retaliation because they preceded her protected activity (the filing of the MCAD Charge).

---

[11] HMI notes that Plaintiff's *pro se* status does not relieve her of her obligations to abide by the rules of procedure. Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996) (even a *pro se* complainant is required to describe the essential nature of the claim and to identify the core facts upon which it rests).

Plaintiff simply does not state facts showing that HMI took any adverse action against her after she complained of discrimination to the MCAD.  Her conclusory, sweeping accusations of "a hostile work environment" do not suffice because they are unaccompanied by any specific factual averments.  Thus, HMI submits that Plaintiff's claim against it under Title VII, for retaliation, must be dismissed.

### C.  Plaintiff Failed To Exhaust Her Administrative Remedies For Claims of National Origin and Disability Discrimination

Title VII requires an employee to file an administrative charge prior to commencing a civil action for employment discrimination, including on the basis of national origin.  *Lattimore,* 99 F.3d at 464; 42 U.S.C. § 2000e-5(f).  The purpose of the requirement is to provide the employer with prompt notice of the claim, and to create an opportunity for conciliation.  *Lattimore,* 99 F.3d at 464.  "That purpose would be frustrated if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action."  *Id.* Consequently, the scope of the civil complaint is limited to the matters alleged with the administrative agency, and the investigation which can reasonably be expected to grow out of that charge.  *Id.*[12]

The ADA also requires the exhaustion of administrative remedies.  *Bonilla v. Muebles J.J. Alvarez, Inc.,* 194 F.3d 275, 277 (1st Cir. 1999).  A plaintiff alleging employment discrimination on the basis of disability or perceived disability must first file a charge with the EEOC (or appropriate state agency) before going to court with his or

---

[12] In the event that the Court were to hold that Plaintiff purports to state a claim for national origin or disability discrimination under M.G.L. Chapter 151B in her Amended Complaint, HMI states that the same principles of exhaustion of administrative remedies apply.  *Lattimore,* 99 F.3d at 464.

her claim. Similarly, Chapter 151B requires such exhaustion of administrative remedies for claims of disability or perceived disability discrimination under Chapter 151B.

In Plaintiff's MCAD Charge (also filed with the EEOC), she alleged that HMI discriminated against her on the basis of race and color (black).[13] She never complained that HMI had discriminated against her on the basis of her national origin (including her name), nor did she claim that she had been discriminated against because she had attempted suicide. In her Amended Complaint, Plaintiff claims that HMI (and others) discriminated against her on the basis of her national origin, as well as her race. She also contends that certain individuals harassed and intimidated her, and that her boss declined to give her certain work, because she had attempted suicide. Amended Complaint, Facts. HMI interprets these latter allegations as purporting to allege a claim of disability or perceived disability discrimination.[14]

Because Plaintiff did not allege claims of national origin or disability (including perceived disability) discrimination in the administrative proceedings, HMI was never provided notice of these charges or given an opportunity to conciliate them. Accordingly, to the extent that her Amended Complaint might be deemed to state these claims, they must be dismissed for Plaintiff's failure to exhaust her administrative remedies in connection with them.

---

[13] In her Charge, Plaintiff referred to a co-worker as having made inappropriate comments, suggesting the possibility of a sexual harassment claim. She never filed a Charge of sexual harassment. Nevertheless, the MCAD investigated both the claim of race and color discrimination and the possible claim of sexual harassment, and determined that no discrimination or sexual harassment had occurred. *See* MCAD Lack of Probable Cause Finding, attached hereto as Ex. "B."

[14] It is not clear whether Plaintiff intends to state such claims. She does not reference the ADA, but states merely that she believes she was discriminated against on the basis of the fact that she had attempted suicide. As discussed herein, HMI submits that Plaintiff fails to state a claim for disability discrimination under either state or federal law.

Furthermore, Plaintiff's *pro se* status does not provide her safe harbor from her obligation to first plead these claims at the MCAD/EEOC. *Lattimore,* 99 F.3d at 464. Even a *pro se* complainant is required to describe the essential nature of the claim and to identify the core facts upon which it rests. *Id.* He or she is not permitted to file general charges of discrimination with the administrative agency, and then pursue all claims of discrimination in a subsequent lawsuit. *Id. Pro se* status also does not entitle a plaintiff to make a specific claim based on one set of facts, and later, assert an entirely different claim based on a different and unrelated set of facts. *Id.*

At the MCAD, Plaintiff failed to allege claims of discrimination based on national origin or disability, and these claims were never investigated by the MCAD or EEOC. Thus, to the extent that she now belatedly characterizes her complaint as resting on national origin or disability discrimination, her claims are barred for failure to exhaust her administrative remedies. *See id.* at 465 (dismissing as a matter of law Plaintiff's claims that were beyond the scope of the administrative charge); *Rios v. Rumsfeld,* 323 F. Supp. 2d 267, 273 (D.P.R. 2004) (dismissing Plaintiff's discrimination claim based on national origin because "a claim of national origin discrimination cannot be said to reasonably result from a EEO filing based on retaliation.").

### D.  Plaintiff Fails To State A Claim of Disability Discrimination[15]

Even if Plaintiff had included a claim of disability or perceived disability discrimination at the MCAD/EEOC, her claim would now fail because she does not allege the requisite facts.  In order to state such a claim, under the ADA or Chapter 151B, the plaintiff must state that she is disabled/handicapped within the meaning of the statutes

---

[15] HMI is mindful of the fact that M.G.L. Chapter 151B uses the term "handicap" rather than "disability," the term used in the ADA.  For ease of reading, HMI simply uses the term "disability" and intends to incorporate within it the term "handicap."

(*i.e.,* that she has a physical or mental impairment that substantially limits her in the performance of one or more major life activities); she was a qualified individual, (*i.e.,* able to perform the essential functions of the position with or without reasonable accommodation); and, that she was subjected to adverse action because of her disability or handicap. *Tobin v. Liberty Mut. Ins. Co.,* 433 F.3d 100, 104 (1st Cir. 2005); *Ward v. Massachusetts Health Research Inst., Inc.,* 209 F.3d 29, 32-33 (1st Cir. 2000). If the plaintiff alleges *perceived* disability discrimination he or she must state facts showing that the employer perceived the plaintiff to be disabled and treated him or her in a discriminatory manner because of that belief. *See Whitlock v. Mac-Gray, Inc.,* 2002 U.S. Dist. LEXIS 20878, *8 (D. Mass. 2002).[16]

    Plaintiff does not set forth allegations in her Amended Complaint that would allow, much less require, a finding that she had or has a disability. There are no factual averments reflecting any impairment of Plaintiff's abilities, much less any showing that she was substantially limited in her ability to do anything. In fact, Plaintiff's allegations that she attended college, and worked for HMI, show that she was fully capable of working. There can be no claim for disability discrimination if the Plaintiff has not pled a disability.

    Nor does Plaintiff's Amended Complaint contain allegations to sustain a claim of perceived disability. Plaintiff states that Ms. Fraunfelter told her she could not work on "the CPA" because she had attempted suicide, but there are no allegations showing that Ms. Fraunfelter's statement was based on her belief that Plaintiff had a disability. Nor are there allegations reflecting that this alleged prohibition constituted an "adverse action" for purposes of the ADA or Chapter 151B. It could only have been an adverse

---

[16] A true and accurate copy of *Whitlock* is attached hereto as Ex. "D".

-10-

action if it had some tangible negative impact on the terms and conditions of Plaintiff's employment. *See White v. New Hampshire Dep't of Corrections,* 221 F.3d 254, 262 (1st Cir. 2000) (Adverse employment actions include demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees).

Finally, Plaintiff does not state sufficient facts to show a hostile work environment on the basis of her disability or perceived disability. In order to do so she would have to plead facts showing a workplace permeated with severe and pervasive offensive conduct, arising from others' perception of her as disabled. *O'Rourke v. City of Providence,* 235 F.3d 713, 728 (1st Cir. 2001). The Amended Complaint contains no such facts.

Accordingly, HMI submits that Plaintiff's purported claims for disability or perceived disability discrimination should be dismissed for: (1) failure to exhaust administrative remedies; and (2) failure to state a claim.

### E.  Plaintiff Failed To Exhaust Her Administrative Remedies For Her Claim of Retaliation

In her Amended Complaint, Plaintiff claims that she engaged in protected conduct when she filed her Charge of discrimination with the MCAD, and that HMI retaliated against her for filing this Charge. Plaintiff's retaliation claim must fail, not only because she fails to state a claim as set forth *supra* in Section II(B), but also because she never filed this claim with the MCAD.

Plaintiff points to her filing of the Charge on November 18, 2002 as the protected activity for which HMI retaliated against her. Plaintiff failed, however, to amend her Charge at the MCAD to include a claim for retaliation despite the fact that she had almost

two years (the time between her resignation and the MCAD's LOPC finding) to amend

her claim, and bring the alleged retaliation claim to the MCAD's attention. Her complete

and unjustified failure to exhaust her administrative remedies in connection with this

claim requires this Court's dismissal of it.

### F.  Plaintiff Cannot State A Claim Against HMI Under The Rehabilitation Act of 1973

To the extent that Plaintiff purports to state a claim under Section 504 of the

Rehabilitation Act of 1973 (29 U.S.C. § 791), her claim fails because HMI is a privately

held company, and not a local, state or federal governmental agency. 29 U.S.C. § 794(a);

*see, e.g., Redd v. Summers,* 232 F.3d 933, 937 (D.C. Cir. 2000) (Section 504 addresses

discrimination only in any program or activity conducted by any executive agency).

Because HMI is not a governmental agency, Plaintiff cannot demonstrate that she is

entitled to relief under Section 504, and her claim must be dismissed as a matter of law.

### G.  Plaintiff Has No Basis For A Claim Under M.G.L. c. 149 § 19

To the extent that Plaintiff purports to state a claim under Massachusetts General

Law, Chapter 149, section 19, it should be dismissed because section 19 provides no

private right of action. Massachusetts courts are reluctant to infer a private cause of

action from a statute in the absence of some indication from the Legislature supporting

such an inference. *All Brands Container Recovery, Inc. v. Merrimack Valley Distribt.*

*Co.,* 764 N.E.2d 931, 934 (Mass. App. Ct. 2002). Here, unlike several other sections in

chapter 149, the legislature has provided no private right of action. *See* M.G.L. c. 149, §

150 (stating that there is a private right of action for employees who claim to be

aggrieved by violations of §§ 148, 148A, 148B, 150C, 152, 152A or 159C, or c. 151, §

19). Accordingly, Plaintiff's claim under this section should be dismissed.

Plaintiff's claim under section 19 should <u>also</u> be dismissed as preempted by M.G.L. Chapter 151B, which provides, in pertinent part, "As to acts declared unlawful by section four, the procedure provided in this chapter shall, while pending, be exclusive." M.G.L. c. 151B, § 9. The Massachusetts Supreme Judicial Court has interpreted this broad exclusivity provision to embody a legislative intent to subject all discrimination claims to some administrative scrutiny, emphasizing that a person may not evade Chapter 151B's procedural requirements by recasting a discrimination claim as a violation of other Massachusetts statutes. *Green v. Wyman-Gordon Co.,* 664 N.E.2d 808, 811 (Mass. 1996) (dismissing plaintiff's claims under other state statutes). Accordingly, Plaintiff's claim under Chapter 149, section 19, should be dismissed.

### H. Any Common Law Claims Against HMI Are Barred By The Massachusetts Workers' Compensation Act.

Should the Court interpret the Amended Complaint as purporting to state any common law claims as a result of Plaintiff's alleged personal injuries, HMI submits that such claims are barred by the exclusivity provisions of the Massachusetts Workers' Compensation Act. The Act states, in pertinent part,

> An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right[...]

Mass. Gen. L. ch. 152, § 24. Plaintiff does not allege that she provided HMI with a written reservation of her rights under these provisions. *See Choroszy v. Wentworth Inst. of Tech.,* 915 F. Supp. 446, 452 (D. Mass. 1996) ("Massachusetts workers' compensation law prevents an employee from bringing...tort claims against his employer for work-related injuries unless the employee has reserved his right to do so."). As a result,

Plaintiff's common law claims against HMI are barred by the exclusivity provisions if:
(1) she is shown to be an employee of HMI; (2) her condition is shown to be a "personal
injury" within the meaning of the Workers' Compensation Act; and (3) the injury is
shown to have arisen out of, and in the course of, her employment. *Foley v. Polaroid
Corp.*, 413 N.E.2d 711, 713-714, (Mass. 1980); *Green*, 664 N.E.2d at 813.

In Plaintiff's Amended Complaint, she admits that she was HMI's employee and
that her alleged injuries arose out of her course of employment at HMI. Accordingly, any
common law claim seeking damages for those injuries is barred by the exclusivity
provision of the Workers' Compensation Statute. *See id.* at 814 (dismissing Plaintiff's
claims for negligent infliction of emotional distress as barred by the exclusivity provision
of the Massachusetts Workers' Compensation Act). Intentional torts as well as
negligence claims are barred. *See Anzalone v. Massachusetts Bay Transp. Authority,* 526
N.E.2d 246, 249 (Mass. 1988) (the exclusivity provision bars lawsuits for intentional torts
committed in the course of the employment relationship); *Green,* 664 N.E.2d at 813
(employee's common law claims for intentional infliction of emotional distress arising
out of sexual harassment in the workplace are barred). Thus, HMI submits that should
the Court interpret the Amended Complaint as purporting to state claims sounding in tort,
they are barred.

## I.    CONCLUSION

For the foregoing reasons, Defendant HMI respectfully requests that the Court dismiss each of Plaintiff's claims against it with prejudice.

Respectfully submitted,

HABIT MANAGEMENT, INC.

By its attorneys,

/s/ Jennifer C. Tucker
Jennifer C. Tucker (BBO #547944)
David M. Jaffe (BBO #641610)
Littler Mendelson PC
One International Place
Suite 2700
Boston, MA  02110
(617) 378-6000

### Certificate of Service

I, Jennifer Catlin Tucker, hereby certify that I delivered a copy of this electronically filed Motion to Dismiss by certified mail on June 9, 2006, postage pre-paid, to Sheila Mae Travers-Sheik, 7 Jonathan Lane, P.O. Box 743, East Falmouth, MA 02536.

/s/ Jennifer C. Tucker
Jennifer Catlin Tucker

Firmwide:81165081.1 050742.1002

# Exhibit A

### The Commonwealth of Massachusetts
### Commission Against Discrimination
### One Ashburton Place , Boston, MA 02108
### Phone:  (617) 994-6000 Fax:  (617) 994-6024

| MCAD DOCKET NUMBER: 02BEM03858 | EEOC/HUD CHARGE NUMBER: 16CA300392 |
|---|---|
| FILING DATE: 11/18/02 | VIOLATION DATE: 11/18/02 |

Name of Aggrieved Person or Organization:
Sheila M. Travers-Shiek
7 Jonathan Lane
East Falmouth, MA 02536
Primary Phone: (508)540-2893 ext. ____

Named is the employer, labor organization, employment agency, or state/local government agency who discriminated against me:
Habit Management Institute
Human Resources - Legal Department
20 Forsyth Avenue
South Yarmouth, MA 02664
Primary Phone: (508)398-5155 ext. ____

Linda  Fraundfelt, Mgmt Assistant
Habit Management Institute
20 Forsyth Avenue
South Yarmouth, MA 02664

Art  Eisner
Habit Management Institute
20 Forsyth Avenue
South Yarmouth, MA 02664

No. of Employees:         25+
Work Location: S. Yarmouth

Cause of Discrimination based on:
Race, Color, Black (Non-Hispanic).

**The particulars are:**
I, Sheila M. Travers-Shiek, the Complainant believe that I was discriminated against by Habit Management Institute, Linda  Fraundfelt, Mgmt Assistant,Art  Eisner, on the basis of Race, Color, Race, Color. This is in violation of M.G.L. 151B Section 4 Paragraph 1 and Title VII.

I have been employed by the Respondent Habit Management for approximately two (2) years in "unit management".  Recently or on or about November 15, 2002, the Respondent reclassified my position for other employees in the Respondent's workplace. However, I  was classified as "office assistant"   where others not in my protected class were reclassified "office associate". I believe that my educational and work experience warranted this reclassfication.  Simultaneously,  Respondent  Linda Fraundfelt who is my immediate supervisor has decreased my work hours.  I have knowledge  that others who received the recent reclassifcation  were not subjected to a cut in hours, but they were given more  hours. Additionally, Respondent Art Eisner, who is a co-worker has subjected me to discriminatory remarks on more than one occasion and more recently, his discriminatory actions have escalated.  Recently I have been harassed on

MCAD Docket Number 02BEM03858, Complaint

02BEM03858
11/18/2002

my personal medical history. As a result of the differing terms and conditions and harassment that I have been subjected to, I have suffered continuous emotional distress. I believe these actions against me at my workplace are discriminatorily motivated due to my race and color, Black.

-----------------------------------------------------------------------------------------------------------------------

I swear or affirm that I have read this complaint and that it is true to the best of my knowledge, information and belief.

_Keil m Travers - Shiek_
(Signature of Complainant)

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS DAY of 11/18/2002.

NOTARY PUBLIC: _Diane Chang_

SIGNATURE NOTARY PUBLIC: _____
MY COMMISSION EXPIRES: _2/27/09_

MCAD Docket Number 02BEM03858, Complaint

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

| | |
|---|---|
| Habit Management Institute<br>Human Resources - Legal Department<br>20 Forsyth Avenue<br>South Yarmouth, MA 02664 | Person Filing Charge:<br>This Person (Check One):<br><br>Date of Alleged Violation:<br>Place of Alleged Violation:<br>EEOC Charge Number:<br>MCAD Docket Number: |

Sheila M. Travers-Shiek
( ) Claims to be aggrieved
( ) Is filing on behalf of
11/18/02
South Yarmouth, S. Yarmouth
16CA300392
02BEM03858

Linda Fraundfelt, Mgmt Assistant
Habit Management Institute

20 Forsyth Avenue
South Yarmouth, MA 02664

Art Eisner
Habit Management Institute

20 Forsyth Avenue
South Yarmouth, MA 02664

NOTICE OF CHARGE OF DISCRIMINATION WHERE AN FEP AGENCY WILL INITIALLY
PROCESS (See Attached Information Sheet For Additional Information)

You are hereby notified that a charge of employment discrimination under
    [ ] Title VII of the Civil Rights Act of 1964
    [ ] The Age Discrimination in Employment Act of 1967 (ADEA)
    [ ] The Americans Disabilities Act (ADA)
Has been received by
[ ]   The EEOC and sent for initial processing to   MCAD
                                           (FEP Agency)

[ ]   The Mass. Commission Against Discrimination
     (FEP) Agency and sent to the EEOC for dual filing purposes.

While the EEOC has jurisdiction (upon the expiration of any deferral requirements if this is a Title VII
or ADA Charge) to investigate this charge, EEOC may refrain from beginning an investigation and
await the issuance of the Agency's final findings and orders. These final findings and orders will be given
weight by EEOC in making its own determination as to whether or not reasonable cause exists to believe
that the allegations made in the charge are true.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by
you to the Agency in the course of its proceedings will be considered by the Commission when it
reviews the Agency's final findings and orders. In many instances the Commission will take no further
action, thereby avoiding the necessity of an investigation by both the Agency and the Commission. This
likelihood is increased by your active cooperation with the Agency.

[X]   As a party to the charge, you may request that EEOC review the final decision and order of the above
     named Agency. For such a request to be honored, you must notify the Commission in writing within
     15 days of your receipt of the Agency's issuing a final finding and order. If the agency terminates
     its proceedings without issuing a final finding and order, you will be contacted further by the
     Commission. Regardless of whether the Agency or the Commission processes the charge, the
     Recordkeeping and Non-Retaliation provisions of Title VII and the ADEA as explained on the
     second page of this form apply.

For further correspondence on this matter, please use the charge number(s) shown.

EEOC Charge Number 16CA300392, EEOC Transmittal Letter to Respondent

[ ]    An Equal Pay Act Investigation (29 U.S.C 206(d) will be conducted by the Commission concurrently
       with the Agency's investigation of the charge.

[X]    Enclosure: Copy of the Charge

Basis of Discrimination

| ( ) Race | ( ) Color | ( ) Sex | ( ) Religion | ( ) National Origin |
| ( ) Age | ( ) Disability | ( ) Retaliation | ( ) Other | |

Circumstances of alleged violation:

   SEE ENCLOSED COPY OF THE CHARGE OF DISCRIMINATION (or EEOC FORM 5)

| Date | Type Name/Title of Authorized EEOC Official | Signature |
| 11/18/2002 | Robert L. Sanders, Director | |

EEOC Charge Number 16CA300392, EEOC Transmittal Letter to Respondent

**Exhibit B**

# MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION
## ONE ASHBURTON PLACE, ROOM 601, BOSTON, MA 02108
### (617) 727-3990

## -DISMISSAL and NOTIFICATION of RIGHTS-

| | |
|---|---|
| **TO:** Sheila M. Travers-Shiek<br>7 Jonathan Lane<br>East Falmouth, MA 02536 | **CASE:** Sheila M. Travers-Shiek v. Habit Management Institute, et al.<br>**MCAD NO:** 02BEM03858<br>**EEOC NO:** 16CA300392<br>**INVESTIGATOR:** Nickolas M. Connery     SEP 0 1 2004 |

**Your complaint has been dismissed for the following reasons:**

[ ]    The facts you allege fail to state a claim under any of the statutes the Commission enforces.

[ ]    Respondent employs less than the required number of employees

[ ]    Your complaint was not timely filed with the Commission, i.e. you waited too long after the date(s) of the alleged discrimination to file. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[ ]    You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conference, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your complaint. You have had more than 30 days in which to respond to our written request.

[ ]    The Commission's efforts to locate you have been unsuccessful. You have had at least 30 days in which to respond to a notice sent to your last known address.

[ ]    The Respondent has made a reasonable settlement, offering full relief for the harm you alleged. 30 days have expired since you received actual notice of this settlement offer.

[ **X** ]   The Commission issues the following determination. Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes a violation of the statutes. This does not certify that the Respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this complaint.

### -NOTICE of APPEAL-

If you wish to appeal the dismissal of your complaint and believe that the above stated reason for dismissal is incorrect, you may appeal to this Commission within 10 days after receipt of this notice. You or your attorney must make your appeal of the dismissal in writing to the appeals clerk of this Commission. Attention: Ms. Nancy To.

All employment complaints, where applicable, were filed by the MCAD with the Equal Employment Opportunity Commission. Our finding, which will be forwarded to its area office, JFK Federal Building, Boston, MA will be given substantial weight provided that such findings are in accordance with the requirements of Title VII of the Civil Rights Act of 1964, the ADEA, and/or the ADA, as amended.

_____
Dorca I. Gomez
Investigating Commissioner

_9-1-2004_
DATE

**CC:** Richard J. Keefe, Esq.
VP of Human Resources & General Counsel
Habit Management Institute Corporate Offices
205 Portland Street
Boston, MA 02114

MEMORANDUM

TO: File.
FR: Nickolas M. Connery, Field Representative
CASE: Sheila M. Travers-Shiek v. Habit Management Institute, Inc. et al.
MCAD NO: 02BEM03858
EEOC NO: 16CA300392
EMPLOYEES: 25+

## RECOMMENDATION FOR DISMISSAL OF THE COMPLAINT

**ISSUES INVESTIGATED:** On November 18, 2002, the Complainant, Ms. Sheila M. Travers-Shiek, filed a claim with this Commission alleging that she had been discriminated against on the basis of Sex (female) and Race/color (black), in that she was subjected to unequal terms and conditions of employment, sexual harassment by a co-worker, Mr. Art Eisner, and Constructive Discharge, in violation of MGL 151B, Section 4, Paragraphs 1 and 16a, and of Title VII of the 1964 Civil Rights Act (as amended).

**SUMMARY OF FINDINGS:** Complainant has failed to establish a prima face case for disparate treatment. The Complainant is a member of the protected classes for Race and Sex. However, Respondent has articulated and substantiated a legitimate non-discriminatory reason for its actions. Complainant's title was reclassified and her responsibilities modified in Spring 2002, as a result of a company-wide restructuring instituted by Respondent. Complainant's hours were reduced because new technology made one of her primary responsibilities, client drug testing, much less time consuming. Complainant has failed to prove that, but for her Race or Sex, she would have been reclassified differently. Therefore, this charge must be dismissed.

Complainant has established a prima facie case for harassment. Complainant alleges that her co-worker, Art Eisner, subjected her to unwanted comments related to her Sex and Race. However, the Complainant specifically articulates only one incident of such conduct, contrary to her assertion of "ongoing harassment." Moreover, Complainant was uncooperative with Respondent's investigation into the incident, and no more such incidents were reported to Respondent's management. Complainant's other claims of harassment are vague and unsubstantiated. An isolated incident of inappropriate conduct by a co-worker does not rise to the level of harassment. Therefore, this charge must be dismissed.

Complainant has not established a prima face case for Constructive Discharge. Complainant was not meeting the reasonable expectations of her employer. The Complainant was not adequately performing assigned job duties and was unwilling or unable to accept constructive criticism from superiors. The Complainant's difficulties with taking directions culminated in an argument with one of her supervisors, Linda Fraundfelter on or about December 19, 2002. Complainant misinterpreted her supervisor's criticism as harassment. Complainant left her shift early, and sent notice of her voluntary resignation the following day. Complainant has not demonstrated a substantive connection between her Race or Sex and her problems with Respondent's management.

Complainant has not offered sufficient information to show that either of the individually named Respondents, Linda Fraundfelter or Art Eisner, engaged in willful conduct designed to purposefully violate her civil rights. Therefore, all claims against these Respondents must be dismissed.

**CONCLUSION:**

For the foregoing reasons, a lack of probable cause finding is recommended.

Nickolas M. Connery
Investigator

Katherine M. Martin, Esq.
Supervisor

# Exhibit C

EEOC Form 161 (3/98)                    U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Sheila M. Travers-Shick<br>7 Jonathan Lane, P.O. Box 743<br>East Falmouth, MA 02536 | From: Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |
|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16C-2003-00392 | Anne R. Giantonio,<br>Intake Supervisor | (617) 565-3189 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

_(signature)_

Robert L. Sanders,
Area Office Director

MAY 1 2005

(Date Mailed)

Enclosure(s)

cc: HABIT MANAGEMENT INSTITUTE
20 Forsyth Avenue
South Yarmouth, MA 02664

Enclosure with EEOC
Form 161 (3/98)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),**
**or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you receive this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred more than **2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit **before 7/1/02 –** *not* 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION -- Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need more to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**Exhibit D**

LEXSEE

**JAMES WHITLOCK, Plaintiff v. MAC-GRAY, INC., DALE INGERSOLL, and MICHAEL WINEGARDEN, Defendants**

**CIVIL ACTION NO. 00-10546-GAO**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

**2002 U.S. Dist. LEXIS 20878**

**October 30, 2002, Decided**

**SUBSEQUENT HISTORY:** Affirmed by Whitlock v. Mac-Gray, Inc., 2003 U.S. App. LEXIS 20275 (1st Cir. Mass., Oct. 6, 2003)

**DISPOSITION:** [*1] Defendants Mac-Gray's and Ingersoll's motion for partial summary judgment as to counts I, II, III, VI and VII GRANTED. Counts IV and V against defendant Michael Winegarden dismissed for failure of service of process.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendants, his former employer and two former supervisors, for alleged discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C.S. § 12101 et seq., and for negligent and intentional infliction of emotional distress. Apparently, he had not served process on one supervisor. The other supervisor and the employer (movants) sought partial summary judgment, Fed. R. Civ. P. 56.

**OVERVIEW:** The employee alleged movants violated the ADA by discriminating against him and subjecting him to a hostile work environment because of his attention deficit hyperactivity disorder (ADHD). The employer and the moving supervisor successfully sought partial summary judgment, Fed. R. Civ. P. 56, on the claims against them. The employee failed to proffer evidence sufficient to permit a jury to conclude (1) that his ADHD substantially restricted his ability to perform a range of jobs available in the accessible geographical area; (2) that there was a record that he had an impairment that would restrict his ability to work at jobs comparable to his job with the employer; or (3) that movants regarded him as having such an impairment. In light of those conclusions, it was not necessary to reach the employee's hostile-work-environment allegations. Neverthe-

less, the court noted that the employee admitted that, without being subjected to coercion, he voluntarily accepted paid disability leave. Also, the "abusive treatment" he received was ordinary and incidental criticism that any supervisor might present against an employee who occasionally produced poor work or broke workplace rules.

**OUTCOME:** The court granted the employer's and the supervisor's motion partial for summary judgment.

**CORE TERMS:** disability, disabled, impairment, harassment, comparable, workplace, ability to perform, supervisor, deposition, abusive, summary judgment, disorder, partial, infliction of emotional distress, reasonable person, present evidence, long term, accommodation, discriminated, objectively, accessible, subjected, offensive, permanent, pervasive, training, shipper, qualify, prevail, doctor

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > General Overview*
*Civil Procedure > Summary Judgment > Standards > Legal Entitlement*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN1] Summary judgment may be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court must examine the record evidence in the light most favorable to, and

drawing all reasonable inferences in favor of, the non-moving party.

*Labor & Employment Law > Discrimination > Disability Discrimination > Proof > Burdens of Proof > Employee Burdens*

[HN2] To prevail on a claim under the Americans with Disabilities Act (ADA), 42 U.S.C.S. § 12101 et seq., a plaintiff has the burden of establishing (1) that he is disabled within the meaning of the ADA; (2) that he is qualified to perform the essential functions of the job; and (3) that his employer took adverse action against him because of his disability.

*Evidence > Testimony > Examination > Cross-Examination > General Overview*
*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Disabilities > Impairments > Major Life Activities*
*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Qualified Individuals With a Disability*

[HN3] Under the Americans with Disabilities Act (ADA), 42 U.S.C.S. § 12101 et seq., a person may be said to have a "disability" if he (A) has a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) has a record of such an impairment; or (C) is regarded as having such an impairment. 42 U.S.C.S. § 12102(2). For the impairment to be considered "substantially limiting," it must be permanent or long term. Merely having an impairment or submitting evidence of a medical diagnosis does not prove one is disabled for the purposes of the ADA. Rather, an ADA plaintiff is required to present evidence showing specifically how the limitations caused by the impairment have significantly affected a major life activity.

*Evidence > Testimony > Examination > Cross-Examination > General Overview*
*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Disabilities > Impairments > Major Life Activities*
*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Qualified Individuals With a Disability*

[HN4] Regarding a claim under the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq., "major life activities" are those that are of central importance to daily life. 29 C.F.R. § 1630.2(i). But evidence that a person cannot perform a single, particular job does not constitute proof of a substantial limitation in the major

life activity of working. A plaintiff thus has the burden of proving that he is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. 29 C.F.R. § 1630.2(j)(3)(i). Proof that one is limited in the ability to perform either a class or broad range of jobs would include evidence about the availability of comparable jobs within an accessible geographic area, the types and numbers of jobs in the area foreclosed because of the impairment, and the types of abilities, skills, and training job applicants would need to qualify. 29 C.F.R. § 1630.2(j)(3)(ii) (A)-(C).

*Contracts Law > Negotiable Instruments > Enforcement > Joint & Several Instruments*
*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Qualified Individuals With a Disability*

[HN5] Conclusory testimony of a treating physician is insufficient to prove the existence of a disability under the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq.

*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Qualified Individuals With a Disability*

[HN6] A plaintiff asserting a claim under the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq., may establish that he is disabled by showing that his employer regards him as disabled. 42 U.S.C.S. § 12102(2).

*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Qualified Individuals With a Disability*

[HN7] When asserting a claim under the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq., based on a perceived disability, the plaintiff must demonstrate that his employer viewed him as precluded from more than one job.

**COUNSEL:** For James Whitlock, PLAINTIFF: Paul A Gargano, Gargano & Associates Thomas Graves Landing, Cambridge, MA USA.

For Mac-Gray, Inc, Dale Ingersoll, DEFENDANTS: Jeffrey S Siegel, Bradford J Smith, Goodwin Procter LLP, Boston, MA USA.

**JUDGES:** GEORGE A. O'TOOLE, JR., DISTRICT JUDGE.

**OPINIONBY:** GEORGE A. O'TOOLE, JR.

**OPINION:**

    **MEMORANDUM AND ORDER FOR JUDGMENT**

    October 30, 2002

O'TOOLE, D.J.

    On March 22, 2000, James Whitlock filed a seven-count complaint against his former employer, Mac-Gray, Inc. (Mac-Gray) and two former supervisors, Dale Ingersoll and Michael Winegarden. Count I alleges that Mac-Gray discriminated against Whitlock on the basis of a disability -- attention deficit hyperactivity disorder ("ADHD") -- in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). Count II claims that Mac-Gray created a hostile and abusive work environment in response to plaintiff's disability, also in violation of [*2] the ADA. In counts III through VII, Whitlock asserts that Mac-Gray is liable for negligent infliction of emotional distress and that his supervisors, Ingersoll and Winegarden, are liable for both intentional and negligent infliction of emotional distress.

    Defendants Mac-Gray and Ingersoll moved for partial summary judgment as to counts I, II, III, VI, and VII. n1 On October 9, 2002, the Court held a hearing on the defendants' motion. Whitlock opposed defendants' motion for partial summary judgment only as to counts I and II, so oral arguments were limited to those claims. Based on my evaluation of the record and the parties' arguments, I conclude that the motion ought to be granted.

        n1 Apparently Winegarden, the only defendant named in Counts IV and V, was never served with process.

    [HN1] Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [*3] moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 5 (1st Cir. 2000).

    [HN2] To prevail on an ADA claim, a plaintiff has the burden of establishing (1) that he is disabled within the meaning of the ADA; (2) that he is qualified to perform the essential functions of the job; and (3) that his employer took adverse action against him because of his disability. See Carroll v. Xerox Corp., 294 F.3d 231 237 (1st Cir. 2002). [HN3] Under the ADA, a person may be said to have a "disability" if he (A) has a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) has a record of such an impairment; or (C) is regarded as having such an impairment. 42 U.S.C. § 12102(2). For the impairment to be considered "substantially limiting," it must be permanent or long term. Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184,    , 122 S. Ct. 681, 691, 151 L. Ed. 2d 615 (2002). [*4] Merely having an impairment or submitting evidence of a medical diagnosis does not prove one is disabled for the purposes of the ADA. Id. Rather, an ADA plaintiff is required to present evidence showing specifically how the limitations caused by the impairment have significantly affected a major life activity. See id. at 691-92.

    [HN4] "Major life activities" are those that are "of central importance to daily life." Toyota, 122 S. Ct. at 691. "Working" may qualify as a "major life activity." See 29 C.F.R. § 1630.2(i). But evidence that a person cannot "perform a single, particular job does not constitute [proof of] a substantial limitation in the major life activity of working. Lebron-Torres v. Whitehall Labs., 251 F.3d 236, 240 (1st Cir. 2001); see also Sutton v. United Air Lines, 527 U.S. 471, 491, 144 L. Ed. 2d 450, 119 S. Ct. 2139 (1999); Santiago Clemente v. Executive Airlines, 213 F.3d 25, 32 (1st Cir. 2000) ("To be substantially limited in the major life activity of working, [the plaintiff] must be precluded from more than a particular job."). Whitlock thus has the burden [*5] of proving that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i); accord Carroll, 294 F.3d at 239-40; Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, 258 F.3d 30, 33 (1st Cir. 2001). Proof that one is limited in the ability to perform either a class or broad range of jobs would include evidence about the availability of comparable jobs within an accessible geographic area, the types and numbers of jobs in the area foreclosed because of the impairment, and the types of abilities, skills, and training job applicants would need to qualify. See 29 C.F.R. § 1630.2(j)(3)(ii) (A)-(C); see also Duncan v. Wash. Metro. Area Transit Auth., 345 U.S. App. D.C. 170, 240 F.3d 1110, 1115-16 (D.C. Cir.) (en banc) ("The ADA requires a plaintiff . . . to produce some evidence of the number and types of jobs in the local employment market in order to show he is disqualified from a substantial class or broad range [*6] of such jobs . . . ."), cert. de-

nied, 534 U.S. 818, 151 L. Ed. 2d 20, 122 S. Ct. 49 (2001).

The record supports Whitlock's contention that he experienced difficulties while employed by Mac-Gray, but not that his ADHD caused him to be substantially restricted in his ability to perform a whole range of comparable jobs. In fact, Whitlock admitted both in his deposition and in his failure to dispute that he "was capable of adequately performing his work at Mac-Gray, despite [his] ADHD." (Defs. Mac-Gray's and Ingersoll's Statement of Undisputed Material Facts P 13). He acknowledged that he taught himself to use the company's new computer system and that the company placed great trust in his ability to do his job. The plaintiff failed even to assert, never mind present evidence, that his condition precluded him from working in a broad range or class of jobs, proof that is required to establish that his ADHD constituted a "disability" under the ADA.

The record shows that Whitlock was gainfully employed for Mac-Gray for over twenty years. The evidence that he has a "disability" is limited to a diagnosis of ADHD and his doctor's consequent recommendation that a partioned-off work area [*7] would help prevent his becoming distracted and thus improve his ability to concentrate on his work. The doctor also recommended that Mac-Gray consult with Whitlock about making "any architectural changes," because, since plaintiff is in the workplace, he is "in a good position to evaluate what he would need as reasonable accommodation for his disorder." This note is certainly insufficient in itself to establish that Whitlock is disabled within the meaning of the ADA. See Toyota, 122 S. Ct. at 691; Gonzalez v. El Dia, Inc., 304 F.3d 63, 74 (1st Cir. 2002) [HN5] (conclusory testimony of treating physician insufficient to prove existence of disability under ADA). Whitlock provides no other evidence that his disorder was permanent or long term.

[HN6] An ADA plaintiff may also establish that he is disabled by showing that his employer regards him as disabled. 42 U.S.C. § 12102(2). To prove that Mac-Gray perceived him as disabled, Whitlock offers evidence of discussions between himself and Mac-Gray management about his need for accommodations to help him work effectively despite his ADHD. But the mere fact that such discussions occurred does [*8] not establish that Mac-Gray regarded Whitlock as disabled for ADA purposes. [HN7] The plaintiff must demonstrate that his employer viewed him as precluded from more than one job. See Sutton, 527 U.S. at 492; Santiago Clemente, 213 F.3d at 32. Whitlock does not contest that he declined an alternative position as a "picker" at Mac-Gray, preferring instead to continue working as a "shipper." (Defs. Mac-Gray's and Ingersoll's Statement of Undisputed Material Facts PP 30, 31). As previously noted,

Whitlock testified at his deposition that he believed he could do his job and he also believed his supervisors thought he could do his job. Thus, the record does not support an inference that Mac-Gray viewed Whitlock as disabled within the meaning of the ADA.

In sum, plaintiff has failed to proffer evidence sufficient to permit a jury to conclude (1) that his ADHD substantially restricted his ability to perform a range of jobs comparable to his position as a shipper in Mac-Gray's parts department and available in the accessible geographical area; (2) that there was a record that he had an impairment that would restrict his ability to work at comparable jobs; or (3) [*9] that Mac-Gray regarded him as having such an impairment.

In light of that conclusion, it is not necessary to reach Whitlock's allegations that Mac-Gray discriminated against him on the basis of his ADHD by taking adverse employment actions against him. Nevertheless, I note that Whitlock admitted at his deposition that he voluntarily accepted paid disability leave from Mac-Gray and that he was not coerced into making that decision, even if it is assumed that being placed on involuntary disability leave constitutes an adverse employment action. Moreover, Whitlock also concedes that Mac-Gray made workplace accommodations for him, including agreeing to partition off his work area and permitting him to listen to the radio. Finally, the "abusive treatment" to which Whitlock claims he was subjected (reprimands and negative performance evaluations) were only ordinary and incidental criticism that any supervisor might present against an employee who occasionally produced poor work or broke workplace rules. To prevail on a claim of disability harassment, Whitlock is obliged to establish not only (1) that he is disabled within the meaning of the ADA, but also that (2) he was subjected to unwelcome [*10] harassment, (3) that the harassment was based upon his disability, (4) that the harassment was severe or pervasive enough to alter the conditions of his employment and hostile work environment, (5) that the objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it abusive and the victim in fact did perceive it to be so, and (6) that some basis for employer liability has been established. See O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001) (elements of gender-based workplace harassment under Title VII); Ward v. Mass. Health Research Inst., 48 F. Supp.2d 72, 80 (D. Mass 1999) (assuming without deciding that workplace harassment claim exists under the ADA), rev'd on other grounds, 209 F.3d 29 (1st Cir. 2000). Whitlock has not proffered admissible evidence tending to show that the allegedly harassing conduct toward him was "objectively offensive," and "sufficiently severe and pervasive" such that a reasonable person would find it abusive.

**Conclusion**

For the reasons stated above, defendants Mac-Gray's and Ingersoll's motion for partial summary judgment [*11] as to counts I, II, III, VI, and VII is GRANTED. Counts IV and V against defendant Michael Winegarden are dismissed for failure of service of process.

SO ORDERED.

October 30, 2002
DATE

GEORGE A. O'TOOLE, JR.

DISTRICT JUDGE