**Exhibit A**



RECEIVED
JUN 2 0 2006
By_____

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SHEILA MAE TRAVERS-SHEIK,                )
                                         )
                                         )
                 Plaintiff,              )          C.A. No. 05-11631 GAO
                                         )
v.                                       )
                                         )
HABIT MANAGEMENT INSTITUTE (sic),        )
                                         )
                 Defendant               )
                                         )

P 01

TRANSFER TO: _____        BIC: A          LAF: C          UNIT: DMS

NH: 015528082   SHEIL TRAVERS

                              MBR DATA

APPLICATION TYPE: DISABILITY                    DATE FILED: 07/15/03
ENTITLEMENT DATE: 06/03   ONSET DATE: 12/19/02   DATE LAST INSURED:
ENTITLEMENT DECISION: AWARD
AWARD TYPE: DISABILITY              PIA: $ 891.60   FAMILY MAX: $1337.40
X-REF-#:           X-REF-BIC:   MONTHLY BENEFIT: $ 891.60   PAY CYCLE: 1
TERMINATION DATE:          REASON:
PRIOR PERIOD OF DIB:                             MORE:
SERVICING OFFICE: FO/2   EAST FALMOUTH   MA


SOCIAL SECURITY ADMINISTRATION
48 RESEARCH RD
E FALMOUTH MA  02536

F 3335 TRAVERS-SHIEK, SHEIL
F   37                      12/09/02
F041574                     DOB 01/27/65
DR. G. BARRY M.D.

© 2000 T-System, Inc. Circle or check affirmatives, backslash (\) negatives.

**08**                    Falmouth Hospital
**EMERGENCY PHYSICIAN RECORD**
Low Back Pain / Injury    (5)

ROOM: _____    AGE: _32_    __ EMS Arrival

HISTORIAN: __patient __spouse __paramedics _____
__HX / __EXAM LIMITED BY: _____

**HPI** __chief complaint:__ back pain / injury   chronic back pain

__started (occurred):__ _Fell on ice_
_today slip_  _on back_

__recent injury?__ __no __yes __possibly

__how (context)?__ __lifting __turning / bending __fall / near-fall __trauma

__when?__ as above
__where?__ home / work / school
__other injuries?__ neck / head / other

**Location & radiation of pain:**



pain
paresthesias
paresis

__quality and severity of pain:__
burning / sharp / acute
dull / radiating
similar to prior back pain(s)
mild  moderate  severe

__neurologic symptoms:__
__bowel dysfunction
__bladder dysfunction
__radiation to leg
__sensori-motor loss

__Modifying Factors:__
__exacerbated by:__
supine / upright  position:
movement (to right / to left / flexion)
cough / deep breath / nothing

__relieved by:__
supine / upright  position
remaining still
nothing

__Similar symptoms previously__

__Recently seen / treated by doctor__

**ROS**
GU
__trouble w/ urination _____
__frequent urination _____
__blood in urine _____

OTHER
__fever _____
    subjective / to _____ °F
__chills _____

Women  LNMP
__vaginal bleeding _____
    normal period / abnormal
__vaginal discharge _____
__missed/abnormal period(s)

**NEURO & PSYCH**
__headache
__depression
**ENT / PULMONARY CVS**
__sore throat
__cough
__trouble breathing
__chest pain
**GI**
__abdominal pain
__nausea
__vomiting
__diarrhea
__black/bloody stool
**SKIN**
__skin rash
__all systems neg except as marked

**PAST HISTORY**  __negative
__prior back injury _____

__prior back pain _____
    episode(s)  chronic

__intervert. disc disease _____
__sciatica _____
__arthritis _____
__compression fracture(s) _____

__other problems _____

__Surgeries/Procedures__
__none / __noncontributory
__back surgery
    laminectomy  fusion  discectomy

__peptic ulcer disease
    documented? yes / no
__aortic aneurysm
__kidney stone
__urinary tract infection
__prostatitis
__high blood pressure
__diabetes: insulin, oral / diet
__heart disease
__hypothyroidism

__cholecystectomy
__appendectomy
__cardiac bypass
__other:

__Medications__ __none  __see nurses note
__ASA  __NSAID  __acetaminophen

__Allergies__ __ NKDA
__see nurses note

**SOCIAL HX** smoker: _____  drugs:
alcohol (recent / heavy / occasional)

**FAMILY HX**                    P 03

Copy to:

| ACCOUNT NUMBER | | |
|---|---|---|
| 23522 | | 042465 |

MID CAPE MEDICAL CENTER
489 BEARSE'S WAY, UNIT A-4
HYANNIS, MA 02601  TEL. (508) 771-4092

FED. I.D. ___268233
MEDICAL ___113357

TIME-DATE   #12/16/02 9:30

SHEILA M TRAVERS          SEX: F   DOB: 012765          SSN:015528082
7 JONATHAN LANE           E FALMOUTH, MA 02536          PH: 540-2893

RESP:                     P O BOX 957      E FALMOUTH, MA   REL: SE

INSURED NAME: SHEILA M TRAVER
INS: PILGRIM HE               CERT: HP0594781-00          GROUP:
TO PH:                                                    NKA
        Self Pay,                                         AGE 37 CASH ONL

BP 114/70   P 70      RR 16      TEMP

| CE VISIT | NEW | ESTABLISHED | CHIEF COMPLAINT: Stress, — |
|---|---|---|---|
| B | 99201 | 99211 | |
| L | 99202 | 99212 | HX 37 Y/O ♀ ℅ finger — |
| I | 99203 | 99213 | (— Events @ work — ↑ ★ |
| E | 99204 | 99214 | Sleep ↓ ↑ Heartburn — |
| C | 99205 | 99215 | — Nightmare - Insomnia — |
| | WORKMAN'S COMP. | | ? UTI — Frequency — |
| | FIRST AID | | PE — |
| | DSG. CHG. | | HEENT → Mild Clear PND. |
| | BURN—MINOR | | → Chest — Clear to Ausc |
| | DEBRIDE/DRESSING | | Abd — Bowel Sounds — |
| | SPECIFY: | | — |
| | SM. ABSCESS | | |
| | LG. ABSCESS | | |
| | FACE, HAND, EAR—OP NOTE | | |
| | SIMPLE | | |
| | COMPLEX—OP NOTE | | |
| | LENGTH CMS. | | |
| | # SUTURES | | |
| | SUTURE REMOVAL | | |
| | SIMPLE | | |
| | COMPLEX | | |
| | SMALL LESION | | |
| | LARGE LESION | | |
| | NAIL | | |
| | SKIN TAGS | | |
| | SPRAIN OF: | | |
| | FRACTURE OF: | | |
| | SPLINT | | |
| | STRAPPING | | DRO + WK |
| | CONTUSION | | |
| | CORNEAL ABRASION | | |
| | REM. SIMPLE FB | | |
| | REM. COMPLEX FB | | UA — CBC, Chem 26, TSH — |
| | NASAL HEMORRHAGE CONTROL | | |
| | CERUMENECTOMY | | Help Child |
| | | | Next VISIT |
| | ECG WITH INT. & REP. | | |
| | XRAY WITH INT. & REP. | | |
| | | Amount Paid Today | ROBIN PAY BARRAN |
| | TET. TOX. | 20 Ca$ | |
| | ALLERGY | | PHYSICIAN |
| | ACE—COLLAR | | |
| | SLING | | DX: — Stress & R/O UTI — |
| | SPLINT | | |
| | CBC | | |
| | UA | | RX: — Paxil 10.5 mg — Sample 1 |
| | HCG | | — F.U. 3 weeks — |
| | RSAT | | P 04 |
| | VENIPUNCTURE | | — Picolly Powd — |
| | HANDLING FEE | | |
| | TOTAL | | Macrobid TID x 14 — 1 Tab BID x 7 DAY |

```
Student ID: 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          Sheila M. Travers              Page: 1 of 2
Advisor:  Major: MEDA  2nd Major:              Date: 02-Dec-03
Final HS Transcript On File: Y  Entry Date: 03/13/1995    Class:
Fisher Location: 149    Program Type: DAY
English Placement: No placement
Math Placement: No placement

                                          CHECK CREDIT HOURS

DEGREE using 97_98 CATALOGUE
Degree: AS in MEDICAL ASSISTANT
```

| Requirement | Status | Completion |
|---|---|---|
| AS in MEDICAL ASSISTANT | Incomplete | |
| 1A. PROGRAM REQUIREMENTS (26 credits) | Incomplete | |
| AA223 | | |
| EN101 | | EN101  Eng I: Expos Writing C-  3.00  955T |
| MA102 | | |
| LA121 | | LA121  Law&Ethics/Hlth Care 9  3.00  955T |
| ME101 | | |
| ME201 | | ME201  Medical Terminology  9  3.00  956T |
| ME205 | | ME205  Clinical Assisting I S-  3.00  951T |
| ME206 | | ME206  Clinical Assist II  9-  3.00  952T |
| 255F | | |
| 1B. ME102 or ME261 (3 credits) | Completed | |
| ME208 | S | ME208  Med Records/Adm Proc D  3.00  945T |
| 1C. MA115 or ME203 (3 credits) | Completed | |
| 2A. MATH COMPETENCY REQUIREMENT | Completed | |
| MA105 | | MA105  Intro Algebra I  9  3.00  945T |
| 2B. SCIENCE REQUIREMENT (9 cr.) | Completed | |
| SC101 | | SC101  Anatomy & Phys I  9  4.00  945T |
| SC103 | | SC103  Anatomy & Phys II  9-  4.00  941T |
| 3. HUMANITIES (6 credits) | Incomplete | |
| CM105 | | CM105  Public Speaking  9  3.00  955T |
| 4. SOCIAL SCIENCE (6 credits) | Completed | |
| PS101 | | PS101  Intro to Psychology  9A  3.00  952T |
| PS203 | | PS203  Abnormal Psychology  C-  3.00  952T |
| 5A. DA101 or FREE (3 credits) | Completed | |
| DA101 | S | DA101  Intro Keyboarding  9  3.00  952T |
| 5B. DA102 or FREE (3 credits) | Completed | |
| DA102 | S | DA102  Inter Keyboarding  9-  3.00  955T |

```
: Summary of Course Work:
:   Credit earned: 60.00
:   Credit attempted: 75.00
:   G.P.A. Division: 60.00
:        Points: 163.80
:    Points Average: 2.67
```

**P 05**

| CO. | FILE | DEPT. | CLOCK | NUMBER | |
|-----|------|-------|-------|--------|--|
| SRC | 000729 | YARMTH | XN50P | 0000051169 | 1 |

# Earnings Statement

**HABIT MANAGEMENT, INC.**
*P.O. BOX 85397*
*BRAINTREE, MA 02185-0397*

Period Ending:    12/07/2002
Pay Date:    12/13/2002

Taxable Marital Status: Married
Exemptions/Allowances:
   Federal:   0,Tax Blocked
   State:    0,Tax Blocked

**SHIELA M. TRAVERS-SHIEK**
**7 JONATHAN LN**
**P.O. BOX 957**
**EAST FALMOUTH, MA 02536**

Social Security Number: 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

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 10.4300 | 26.00 | 271.18 | 16,200.74 |
| Regular | 11.4300 | 4.00 | 45.72 | |
| Bonus | | | | 125.00 |
| Holiday | | | | 538.68 |
| Worked Holiday | | | | 228.71 |
| **Gross Pay** | | | **$316.90** | 17,823.04 |

| Deductions | Statutory | | |
|------------|-----------|--|--|
| | Social Security Tax | -19.65 | 1,105.03 |
| | Medicare Tax | -4.59 | 258.43 |
| | **Net Pay** | | **$292.66** |

Your federal taxable wages this period are $316.90

| Other Benefits and Information | this period | total to date |
|--------------------------------|-------------|---------------|
| Holiday Hours | | 0.00 |
| P. T. O. | | 118.90 |

P 06

December 19 2002

The Purpose of this Letter is to give my Notice of Resignation from my Position of Female Aid, Here at HMI. Due to the Menner in which I was approached by Linda Fraunfelt. I felt threatened and do not wish to work in Such an enviroment. I feel the situation should have been handled in a more appropriate menner and, I do not wish to work in this current Condition.

Sheila M Travers - Shiek

'Workers' Compensation

The Worker's Compensation Law of Massachusetts provides benefits for employees who suffer work-related fatality.

Stress-related disorder are compensable but with restrictions. Personal injuries include mental or emotional disabilities only where a significant contributing cause of such disability is an event or series of events occurring within the employment. On or after December 23, 1991, personal injuries are compensable if they include mental or emotional disabilities only where the predominant contributing cause of such disability is an event or series of events occuring within the employment.

To mental or emotional disability arising out of bona fide personnel action including a tranfer, promotion, demotion or termination, except where the action is made intent to inflict emotional harm, is personal injury.

There fore, where an employee or former employees alleges that he or she intentional infliction of

emotional distress resulting from some type of personal action, that claim is included in the definition of personal injury. In such a case, the workers' compensation statute is the exclusive remedy.

A) I Sheila M Teavees-Sheik was a former employee of (HMI) Habit Management Institute.

B) On December 9, 2002 I went to Falmouth Hospital, I mention that I was under alot of stress because of my job, Habit Management Institute.

C) On December 16, 2002 I went to the Mid Cape Medical Center, my chief complaint was under alot of stress by events at work at Habit Management in Yarmouth MA. They placed me on Paxil for depression

D) I spiraled into a deep deep depression because of events at Habit Management Institute in Yarmouth MA. I am on SSDI because of Intentional Infliction by my former bosses

P 09

Mrs Linda Fraunfelter, Me. Nick
Manozzoni, and former employees
Dan Oleary and Art Eisner, and
Woein the Security Guard from
Cape Way Patrol.

E) My conclition is shown to
be "personal injury" with in the
meaning of the Worker Compensation
Act.
A stress - related disorder by
series of event or events @
work.

F) The injury is shown to have
risen out of, and in the course
of my employment at Habit
Management Institute in Yarmouth
MA.

P 10

## Proving a Prima Facie Case and the Burden of Proof

In discrimination cases involving disparate treatment claims, the Plaintiff employee has the burden to prove his or her allegation of discrimination. Generally, this is referred to as establishing a Prima facie case and includes the following elements.

1. The Plaintiff is a member of the appropriate "Protected class";

2. The plaintiff was either terminated, not hired, or otherwise suffered from an adverse employment decision; and

3. The Plaintiff is qualified for the job (or had been performing the job properly

4. Other less qualified not in the protected class are either hired or continued in employment, instead of the Plaintiff.

Once a Plaintiff-employee presents evidence to establish a prima facie,

P 11

an inference arises that the employer unlawfully discriminated against the employee. The employer the bears the burden of presenting a legitimate, nondiscriminatory reason for its adverse action. When an employee presents evidence of a legitimate reason for its action, the inference of discrimination disappears. The employer's burden is only a burden of production, not of persuasion. The plaintiff must ultimately prove discrimination by showing that the employer's alleged reason of its action is pretext, and that the real reason was intentional discrimination.

Federal Law on Pretext

Until two important decision were issued in 2000, federal and Massachusetts law took different views of a plaintiff's ultimate burden of proof in discrimination cases. Under federal laws prior to 2000, a plaintiff had to demonstrate what has been called "pretext plus" — proof "[b]oth that the employer articulated reason for its employment action.

P 12

On June 1, 2002
I had 33½ hours of weekly
working hours at Habit Management

On July 11, 2002
A half an hour was cut back
by Mrs. Linda Fraunfelter and
Mr. Nick Manozzoni, Leaving me
with 33 weekly working hours

On November 15, 2002
Three hours was cut back by
Mrs. Linda Fraunfelter and
Mr. Nick Manozzoni, Leaving me
with only 30 weekly working
hours

On December 19, 2002
Three more hours was cut back
by Mrs. Linda Fraunfelter and
Mr. Nick Manozzoni, Leaving me
with only 27 weekly working
hours.

No one else in Habit Management
was cut back in hours, just
me the protect class.

P 13

I believe the reason for cutting
my hour was that I complained
to Linda Fraunfelter how she is

handling the work. The next time I was combining about Art Eisner and Linda Fraunfelter, The last time was that I went to the Commission Against Discrimination.

No one else was effected by there hours being cut back. Not on single white individual employee was effected when I was working at Habit Management Institute in Yarmouth MA.

From the time I attempted Suicide I did not miss a day of work for 21 months and I had over 118 hours of (PTO) Personal time off.

# Name Calling

I was Called

A) Black Bitch — Art Eisneer (many times)

B) Frigit Bitch — Malcom (many times)

C) Douch Bag — Jeff the nurse

D) This is not indian property we should drop the bomb on the Irickey and Arabans → Nerin the security Guard

E) Shoot all the mexican

F) Digger — Art Eisneer

G) Anus — Art Eisneer

H) Trap — Linda Fraunfelter

I) I have lack of eckuation — Linda Fraunfel

J) Sheila know I give her problem, I give her a lot of Problem — Lind Fraunfelk

K) Give her Hell Give her Hell — Art Eisneer

L) I love making sheila nervous — Linda Fraunfelter.

P 15

## Medical Assistant

The medical assistant program prepares the student with the administrative and clinical knowledge and skills necessary to assume responsibilities in the modern hospital and medical office.

I Sheila M Traveres — Sheik applied for Secretary, Medical assistant and Business Administrative Assistant.

Each position I applied for was give to a white individual who didn't have work experience or college education.

A) Secretary — was given to Jessica then Betty both white with no secretary experience or college education.

B) Business Administrative Assistant give to Linda Fraunfelter a white individual with no college education and may be a little work experience but the last individual who worked as the Business Administrative her name was Courtney with no work experience or college education

P 16

C) I applied for medical Assistant, I approached Lind Fraunfelter for the position and she simply laughed at me and told me the Position is for People with College education and I mention I have College education, then She replied "you have college education, Please go away."

D) Nick Manozzoni and Courtney a former Business Administator did mention I could have the position for the Secratary but I would have to have a Pay cut of two dollar less from what I was making. But Betty and Jessica who are White receive who didn't go to college or work experience receive the Secretary with two to three dollars more.

E) I had a title call Unit Manager but they (the head bosses) changed the title with Assistant or Associate. Not one individual Who are black received the "Associate" they were simply received the "Assistant title" Only the whites received the

received the "Associate" title.

7) There has never been a black person to be hired for a secretary position or a Business Administrative position only people who are white at Habit Management in Yarmouth MA.

The Elements of A Retaliation
Claim

1. Basic Elements of a Retaliation
Claim

In order to establish a claim for
Unlawful retaliation, the employee
must demonstrate three elements:

1. The employee engaged in a
Protected activity

2. The employee took some adverse
employment action against the employee;
and

3. A causal connection existed
between the protected activity
and adverse action.

A) I sheila m Travers - Sheik
did go to the Commission Against
Discrimination on November 18, 2002

B) A client name Kara Johnson approach
me and mention "why" is Woein
the Security Guard is still working
here? I asked her what do
you mean. Then Kara Johnson

P 19

mention that Wben the Security
Guard had intention to do harm to me
and her husband (kara Johnson husband)
had to talk to Mr Manozzoni
right away.   November 27, 2002

C) Each week Linda fraunfelter
was screaming at me, she also
mention how dare I going to
the Commission Against Discrimaton
and claiming that she is a racist
Who the hell do I think I'am.
December 5, 2002

D) I was not allowed to ese
the telephone or sit by the
Secretary desk, I was know
Segrated from any one. Mrs.
Fraunfelter Confronted me with
this  on  December 3, 2002

E) Mrs Fraunfelter told Don O'leary
and Eisner that I went to
the Commission Against Discrimination.
December 5, 2002

F) December 18, 2002 Don O'leary
was telling the patient that
on February 1 2001 that I
attempted suicide

G) Mrs Fraunfelter confronted me
and told me I was never allowed
to work on the CPA never again
because they don't want some
who attempted Suicide.

I ran to Mr Manuzzoni and
all he could say, "You look
angry well your angry with the
wrong person" I said if I
have nothing to do can I leave
and he dismiss by weving his
hand.

H) This was definitly a Hostile
Enviorment.

December 19, 2002


I) I went into a deep deep
Depression. This was a Stress –
related disorder because because
my former boss Mr Linda Fraunfelter
had intentional infliction upon
me.

P 21

A) On January 3, 2002 I received a raise by Me. Mazzoni an average raise.

B) I was never written up by Me. Mazzoni, for any wrong doing

C) But I was written up twice Once by A former Programmer name Janet Police and Courtney a former Business Administer because I was out for two and half week from work because I attempted suicide. I gave them a note from my docter and they did receive a phone call from Cape Cod Hospital because to tell them I attempted suicide

D) The second time I was written up, it was that I was late for work By nurse Manager: John Vinitskey

E) For 21 months I didn't call out on sick leave or taken any personal time off or any vacation time off

F) I did take one day off Because my Uncle Passed away this was my mother Brother who lived just 5 minutes from us. August 2002

P 22

# Exhibit B

FOCUS - 7 of 45 DOCUMENTS

**MARGARET ASHEY, Plaintiff v. LILY TRANSPORTATION CORP., Defendant**

**CIVIL NO. 01-57-B-S**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE**

*2001 U.S. Dist. LEXIS 8350*

**June 18, 2001, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff filed an action, alleging sex discrimination. Defendant moved to **strike,** pursuant to *Fed. R. Civ. P. 12(f),* two allegations in plaintiff's complaint.

**OVERVIEW:** Defendant argued that the plaintiff had included the subject allegations in her complaint because she was on a fishing expedition to obtain discovery in support of a wholly unrelated worker's compensation claim. The court denied the motion. The subject allegations were neither irrelevant nor relevant to the claims for relief or the defendant's affirmative defenses. There was not great cause for concern that would require such a drastic remedy.

**OUTCOME:** Defendant's motion was denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview*
[HN1] See *Fed. R. Civ. P. 12(f).*

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview*
[HN2] For purposes of *Fed. R. Civ. P. 12(f),* immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded, whereas **impertinent** matter consists of statements that do not pertain, and are not necessary, to the issues in question.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview*
[HN3] The United States Court of Appeals for the Second Circuit holds that a *Fed. R. Civ. P. 12(f)* motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible.

**COUNSEL:** **[*1]** For MARGARET ASHEY, plaintiff: MAURICE A. LIBNER, BRUNSWICK, ME.

For LILY TRANSPORTATION CORP, defendant: MELINDA J. CATERINE, ESQ., MOON, MOSS, MCGILL, HAYES & SHAPIRO, P.A., PORTLAND, ME.

**JUDGES:** Margaret J. Kravchuk, U.S. Magistrate Judge.

**OPINIONBY:** Margaret J. Kravchuk

**OPINION:**

**ORDER**

The defendant has filed a motion pursuant to *Rule 12(f) of the Federal Rules of Civil Procedure* to **strike** two allegations contained in the plaintiff's complaint. The complaint sets forth two counts based on alleged sex discrimination: one premised on Title VII and another premised on the Maine Human Rights Act. The subject allegations are the following:

> 24. On February 1, 2000, a gust of wind slammed a heavy door at the Chinet mill against Plaintiff's left shoulder. Plaintiff reported the injury to Lily and sought medical treatment, which continued for the next several months. However, the Plaintiff did not lose time from work.

25. Plaintiff's symptoms from this injury were aggravated by the setup of her workstation, which was evaluated by an ergonomics consultant in late April, 2000.

## DISCUSSION

[HN1] Rule **12(f)** provides:

> **(f) Motion to Strike**. Upon motion made by a party before [*2] responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, **impertinent,** or scandalous matter.

Wright and Miller inform us that [HN2] immaterial matter "is that which has no essential or important relationship to the claim for relief or the defenses being pleaded," whereas **impertinent** matter "consists of statements that do not pertain, and are not necessary, to the issues in question." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07, 711 (1990). Rule 12(f) motions have not been commonplace either in this Circuit or in this District. According to the First Circuit, that may be explained by the fact that such "motions are narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion." *Boreri v. Fiat, S.P.A., 763 F.2d 17, 23 (1st Cir. 1985).* See also 2 James Wm. Moore et al., *Moore's Federal Practice § 12.37*[1] (3d ed. 2000) [*3] ("Courts disfavor the motion to strike, because it 'proposes a drastic remedy.'"); *Kounitz v. Slaatten, 901 F. Supp. 650, 658 (S.D.N.Y. 1995)* ("Motions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute.") Thus, for instance, where the stated ground for the motion is impertinence or immateriality, [HN3] the Second Circuit holds that "the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976).* The rationale provided by the Second Circuit is, in my view, quite sound:

> The Federal Rules of Civil Procedure have long departed from the era when lawyers were bedeviled by intricate pleading rules and when lawsuits were won or lost on the pleadings alone. Thus the courts should not tamper with the pleadings unless there is a strong reason for so doing.

> Evidentiary questions, such as the one present in this case, should especially be avoided at such a preliminary stage of the proceedings. Usually the questions of relevancy and admissibility in general [*4] require the context of an ongoing and unfolding trial in which to be properly decided. And ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint--on the grounds that the material could not possibly be relevant--on the sterile field of the pleadings alone.

Id. (citations omitted).

The parties' submissions have not moved me to conclude that the subject allegations are either irrelevant or relevant to the claims for relief or the defendant's affirmative defenses. In short, I am not particularly moved by the motion to believe that there is any great cause for concern that would require such a drastic remedy. The defendant complains that the plaintiff has included the subject allegations in her complaint because she "is on a fishing expedition to obtain discovery in support of a wholly unrelated worker's compensation claim." If a discovery dispute should arise on this score, then I may be persuaded at that juncture to permit the defendant to withhold documents and/or testimony related to these allegations. See D. Me. Local R. 26(b).

*SO ORDERED.*

Dated: June 18, 2001

   Margaret J. Kravchuk

   U.S. Magistrate [*5] Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEILA MAE TRAVERS-SHEIK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 05-11631 GAO |
| v. | ) |
| | ) |
| HABIT MANAGEMENT INSTITUTE (sic), | ) |
| | ) |
| Defendant | ) |

### DEFENDANT HABIT MANAGEMENT, INC'S
### MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE
### PLAINTIFF'S PURPORTED OPPOSITION TO HMI'S MOTION TO DISMISS

Defendant Habit Management, Inc. ("Defendant" or "HMI") hereby moves this

Honorable Court, pursuant to Fed. R. Civ. P. 12(f), to strike, in its entirety, the pleading filed by

Plaintiff Sheila Mae Travers-Sheik ("Plaintiff") on June 20, 2006 (the "Filing"). Although the

pleading bears no title, HMI believes that Plaintiff filed this pleading in opposition to its Motion

to Dismiss Plaintiff's Amended Complaint.

As grounds for its Motion, HMI states that Plaintiff's Filing is rife with material that is

outside the pleadings and not properly before the Court in this form, or at this juncture. The

Filing consists of: (1) unexplained and unauthenticated documents, purportedly offered in

support of some of Plaintiff's claims; and (2) numerous factual averments not found in Plaintiff's

Amended Complaint. These documents and averments are not properly before the Court in

connection with its consideration of Defendant's Motion to Dismiss, and should be stricken from

the record. HMI respectfully submits that Plaintiff's entire Filing should be stricken as non-

compliant with the Rules, in that not only does the Filing proffer improper material, but it fails to assert any arguments in opposition to HMI's Motion to Dismiss.

## I.   PROCEDURAL HISTORY

Plaintiff filed a Complaint with this Court on July 28, 2005, and served HMI on September 26, 2005. The Court held a Scheduling Conference on April 20, 2006, at which Plaintiff raised numerous allegations not set forth in her Complaint. The Court ordered Plaintiff to file an Amended Complaint, clarifying her claims and the authority pursuant to which she brought them. Plaintiff filed and served her Amended Complaint on May 12, 2006, naming seven individuals for the first time, as well as HMI, as defendants and proposing some entirely new theories of liability.

On June 9, 2006, HMI moved to dismiss Plaintiff's Amended Complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). As grounds for its Motion, HMI argued that: (1) Plaintiff failed to state claims of race, color or national origin discrimination or retaliation under Title VII; (2) Plaintiff alluded to disability discrimination, but failed to state the requisite factual elements of such a claim under either federal or state law; (3) Plaintiff failed to exhaust her administrative remedies with respect to her claims of national origin or disability discrimination, or retaliation; (4) Plaintiff's claim under the Rehabilitation Act of 1973 failed because that statute does not apply to HMI; (5) Plaintiff's claim under M.G.L. c. 149 § 19 was barred because that statute does not provide a private right of action, and because M.G.L. Chapter 151B would preempt it, even if it did; and (6) any common law tort claims Plaintiff purports to allege are barred by the Massachusetts Workers' Compensation Act.

On June 20, 2006, Plaintiff served the Filing on HMI. As noted above, HMI believes

Plaintiff intended the Filing to constitute her opposition to HMI's Motion to Dismiss. The Filing consists of approximately 11 handwritten pages of factual averments (almost none of which were included in the Amended Complaint), four handwritten pages purporting to summarizing various points of "black letter law," three unauthenticated documents that appear to be medical records of Plaintiff, one unauthenticated document apparently reflecting Plaintiff's taking of certain courses, one document reflecting Plaintiff's earnings from HMI for the period 12/07/02 through 12/13/02; and Plaintiff's letter, dated December 19, 2002, whereby she resigned from HMI.

To date, no hearing has been scheduled for HMI's Motion to Dismiss.

## II.   ARGUMENT

### A.   Motions to Strike

A party may move to strike a pleading (or part of a pleading), or the court may do so on its own initiative, on the ground that it contains "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Immaterial matter is that which "has no essential or important relationship to the claim for relief or the defenses being pleaded[.]" *Ashey v. Lily Transp. Corp.,* 2001 U.S. Dist. LEXIS 8350, *2 (D. Me., Jun. 18, 2001) (*quoting* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07, 711 (1990)). Impertinent matters consist of "statements that do not pertain, and are not necessary, to the issues in question." *Ashey,* 2001 U.S. Dist. LEXIS 8350, at *2 (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07, 711 (1990)).

The Filing should be stricken because it consists virtually entirely of matter – either in the form of documents or new factual averments – that is both immaterial and impertinent in the context of a motion to dismiss, as well-established law reflects.

## B. Plaintiff's Filing Constitutes An Improper Amended or Supplemental Pleading

Plaintiff has taken the opportunity for submission of a new pleading (created by HMI's Motion to Dismiss) to file a further amended complaint. Such amendment, after a responsive pleading has been filed, and without leave of court or consent of HMI, is clearly improper. Fed. R. Civ. P. 15(a); *see also Lattimore v. Polaroid Corp.,* 99 F.3d 456, 464 (1st Cir. 1996) (*pro se* plaintiff is required to adhere to rules of procedure).

To the extent that Plaintiff's Filing purports to be a supplemental (as opposed to an amended) pleading, it must also be stricken. A party may supplement her pleading only by motion. See Fed. R. Civ. P. 7(b)(1), 15(d). Here, Plaintiff has neither sought leave of the Court by motion, nor consent of HMI, to amend or supplement her Amended Complaint. Yet, Plaintiff's Filing constitutes either an amended or supplemental pleading because it contains entirely new factual averments not set forth in her Amended Complaint. For these reasons, Plaintiff's Filing should be stricken in its entirety.

## C. Plaintiff's Filing Should Be Stricken Because She Proffers Documents From Outside the Pleadings As Well As New Factual Averments

When resolving a motion to dismiss for failure to state a claim upon which relief can be granted, courts do not consider matters outside of the pleadings. Fed. R. Civ. P. 12(b)(6); *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001); *Melee v. Federal Reserve Bank of NY,* 359 F.3d 251, 257 (3rd Cir. 2004); *Davidson v. Yihai Cao,* 211 F. Supp. 2d 264, 267 (D. Mass. 2002). Plaintiff is bound, at this juncture, by the facts alleged in her Amended Complaint. Accordingly, the Court should strike all the documents Plaintiff attaches to her Filing, as well as the new factual averments she makes, from the record

before it on HMI's Motion to Dismiss.

### 1.    Medical Documents (P 02-04)

Plaintiff has attached three Medical Documents to the Filing, without explanation. (P 02-04). The documents appear to reflect that Plaintiff filed an application for disability with the Social Security Administration, (P 02), and that she visited two different hospitals in 2002 (one after falling on some ice (P 03) and the other due to experiencing stress (P 04)). Her visits to these hospitals are not referenced in her Amended Complaint. HMI has no way of determining from these unauthenticated documents precisely what they are supposed to show, nor is it HMI's burden to do so. Plaintiff has not articulated any basis upon which to veer from the general, well-established rule that no materials outside the pleadings are to be considered on a motion to dismiss. Accordingly, these documents should be stricken from the record.

### 2.    Course Transcript (P 05)

HMI could speculate that the unauthenticated document reflecting a Student I.D. Number for Plaintiff is a portion of a transcript from an educational institution reflecting Plaintiff's taking of various courses (and only completing some of them). (P 05). It would be entirely inappropriate, however, for HMI to do so at this point. Similarly, it would be improper for the Court to speculate as to the significance of this document, or to rely upon it in any fashion when considering HMI's Motion to Dismiss.

### 3.    Earnings Statement (P 06)

Plaintiff does not explain why she attaches the Earnings Statement for the period December 7-13, 2002 (P 06) to the Filing. Because the document reflects facts that do not appear in the Amended Complaint, and does not appear to fall within the narrow exception described

above, the Court should strike this document from the record.

### 4. Resignation Letter (P 07)

Plaintiff does not explain why she attaches her resignation letter, dated December 19, 2002 (P 07) to the Filing. Again, this document was not part of the Amended Complaint, and may not be thrust upon the Court as part of an Opposition to a Motion to Dismiss. The Court should strike this document from the record.

### 5. Statements Regarding Workers' Compensation (P 08-10)

Plaintiff offers a series of statements regarding Massachusetts Workers' Compensation law, followed by her assertion of facts, not alleged in her Amended Complaint, purporting to demonstrate that she sustained an injury within the meaning of the Workers' Compensation Act. (P 08-10). The factual averments set forth in these pages should be stricken from the record because Plaintiff offers them, for the first time, in the Filing. Once again, absent Plaintiff's showing of the applicability of the narrow exception described above, the Court should consider only those facts alleged within the four corners of the Complaint in deciding HMI's Motion to Dismiss.

### 6. Statements Regarding Prima Facie Case And Burden of Proof (P 11-15)

Plaintiff offers four hand-written pages in which she outlines the law on demonstrating a *prima facie* case of discrimination, certain points concerning the burden of proof in such matters, and facts not alleged in the Amended Complaint about changes in her hours. (P 11-14). These statements should be stricken. The factual averments were not contained in the Amended Complaint, and the other statements are non-responsive to the Motion to Dismiss.

Plaintiff also attaches a handwritten document that purports to identify a series of epithets

and the people who allegedly uttered them (P 15). This entire document should be stricken because every fact detailed in it is a fact that was not identified in the Amended Complaint. In addition, some of the alleged statements do not appear, on their face, to be relevant to Plaintiff's claims.

### 7.    Statements Regarding Medical Assistant Position (P 16-18)

The Filing contains three hand-written pages entitled "Medical Assistant" (P 16-18). In these pages, Plaintiff appears to argue that she was qualified for her position, as well as for other positions at HMI for which she claims to have applied. In the Amended Complaint, Plaintiff averred that she "was never granted [*sic*] for any job position that was open, which I did applied [*sic*] for even thou [*sic*] I have college education for these positions." (Amended Complaint, at p. 4). The pages in her Filing on this issue purport to provide much more detail, seeking to bolster Plaintiff's claims. Once again, such an attempt to file a *de facto* amendment of a pleading, in the guise of an opposition to a Motion to dismiss, is clearly improper. Plaintiff's allegations of new facts should be stricken from the record.

### 8.    Statements Regarding Retaliation (P 19-21)

Plaintiff sets forth the black letter law regarding the elements of a retaliation claim, followed by several paragraphs in which she proffers new facts in support of her claim (P 19-21). Although a handful of these facts (such as Plaintiff's filing of a Charge at the MCAD on November 18, 2002) were stated in the Amended Complaint, most of them were not. In fact, some of the averments concerning alleged retaliation are, on their face, not only new but also irrelevant to the claim. HMI requests that all new factual averments be stricken from the record.

### 9.    Statements Regarding Discipline (P 22)

Plaintiff also attaches another document that appears to be her disciplinary history at HMI, (P 22), but whose facts appear nowhere in her Amended Complaint. These factual averments should be stricken, because Plaintiff raises them improperly in response to HMI's Motion to Dismiss.

## III.    CONCLUSION

The Court should not permit Plaintiff to proceed as she has to date, disregarding well-established rules of practice and procedure. HMI will be prejudiced by such conduct, should it go unchecked. The fact that Plaintiff has elected to proceed *pro se* in this case does not change the fact that HMI is entitled to due process in connection with Plaintiff's claims. For all these reasons, HMI respectfully requests that the Court strike Plaintiff's Filing. Alternatively, if the Court concludes that Plaintiff's Filing, or any portion of it, should not be stricken, HMI seeks leave to file a reply brief to whatever portion of the Filing is not stricken.

Respectfully submitted,

HABIT MANAGEMENT, INC.

By its attorneys,

/s/ David M. Jaffe
Jennifer C. Tucker (BBO #547944)
David M. Jaffe (BBO #641610)
Littler Mendelson PC
One International Place
Suite 2700
Boston, MA 02110
Dated: July 10, 2006                              (617) 378-6000

## Certificate of Service

I, Jennifer Catlin Tucker, hereby certify that I delivered a copy of this electronically filed Motion to Strike by certified mail on July 10, 2006, postage pre-paid, to Sheila Mae Travers-

Sheik, P.O. Box 743, East Falmouth, MA 02536.

/s/ Jennifer C. Tucker _ _ _ _ _ _ _ _ _
Jennifer Catlin Tucker

Firmwide:81280668.1 050742.1002